Minute Order Form (06/97)



# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6528 | **DATE** | 4/29/2002 |
| **CASE TITLE** | Don Jackson vs. Lake County | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to strike the requests for punitive damages [3-2], [6-2] is granted and defendant's motion to dismiss [3-1], [6-1] is denied. Status hearing is set for 5/16/02 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | APR 3 0 2002 | |
| | Notified counsel by telephone. | | date docketed | 12 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 4/29/2002 | |
| | | 02 APR 29 PM 4:58 | date mailed notice | |
| MD | courtroom deputy's initials | | MD | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DON JACKSON, )
)
      **Plaintiff,** )
)
v. ) No. 01 C 6528
)
LAKE COUNTY, an Illinois municipal )
corporation, )
)
      **Defendant.** )

**DOCKETED**

**APR 3 0 2002**

## MEMORANDUM OPINION AND ORDER

Plaintiff, Don A. Jackson ("Jackson"), filed a three-count complaint against defendant municipal corporation, Lake County, Illinois ("Lake County"), alleging violations of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA"). In Count I, Jackson alleges that Lake County violated 42 U.S.C. § 12112(d)(4)(A), by demanding that he submit to a blanket mental examination. In Count II, Jackson alleges Lake County violated 42 U.S.C. § 12112(a) by suspending and subsequently terminating him because of its perception that he was disabled. In Count III, Jackson alleges Lake County violated 42 U.S.C. § 12203(a) and (b) by retaliating against him for exercising his rights. Defendant moves to dismiss Counts II and III pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim upon which relief may be granted, and to strike plaintiff's request (made in all three counts) for punitive damages on the basis that punitive damages are not recoverable against a governmental entity. Plaintiff agrees to withdraw his requests for punitive damages. For the reasons articulated below, the court denies defendant's motion to dismiss.

## MOTION TO DISMISS STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *Gen.*

*Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957); *Kennedy* v. *Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on the motion, the court accepts as true all well pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in favor of the plaintiff. *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999); *Zemke* v. *City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996).

## ALLEGED FACTS

Jackson has worked for Lake County as a Senior Utility Worker since September 23, 1996. He has always met or exceeded Lake County's expectations and, with the exception of an auto accident in which he was involved in July of 1998, apart from the incidents at issue in this case, he has not been criticized by Lake County regarding his performance or his attitude. Jackson has never been diagnosed with, nor sought, medical treatment for any mental health problem or mental disease.

On or about March 1, 2001, Lake County decided to send Jackson to a mental health professional for a psychological evaluation and, on March 19, scheduled Jackson for an appointment on March 29 at 9:00 a.m. to see Dr. Miller, a psychologist. On the evening of March 27, Jackson received a message from Dr. Miller's office informing him about the March 29 appointment. Jackson did not understand why he had received the message since he did not know who Dr. Miller was, had not made the appointment, and had not been notified that an appointment had been made for him, even though he had met with Lake County's Superintendent Martin Galantha ("Galantha") and Operations Manager Robert Brummond ("Brummond") earlier that day. (The purpose of the meeting with Galantha and Brummond was to discuss Jackson's complaints of harassment by certain co-workers. At the meeting, Galantha

2

informed Jackson that the conduct of his co-workers was acceptable and accused Jackson of being "hyper-sensitive.")

The next day, on March 28, Galantha told Jackson that Lake County had made the appointment for him, but Galantha did not give any indication as to the scope of the examination or what Lake County hoped to learn from it. Galantha did tell Jackson, however, that he did not feel Jackson was "mentally fit" and that there was medication for people "like" Jackson. Jackson told Galantha he would go to Dr. Miller's office but wanted to discuss his rights with an attorney before submitting to the examination. Jackson subsequently spoke with an attorney who advised him that he should consult with an employment attorney about his rights before submitting to the examination.

Since Jackson was unable to meet with an attorney specializing in employment law before his appointment, he went to Dr. Miller's office at the scheduled time on March 29 and rescheduled the examination. That same day, Jackson informed Galantha he had rescheduled the examination and explained why he had done so. Galantha responded that Jackson was suspended without pay until he submitted to the examination. In addition to raising his voice and not allowing Jackson to finish responding to his inquiries, Galantha accused Jackson of lying and stated that Jackson's desire to seek legal advice before submitting to the examination was "another example of [Jackson's] abnormal behavior." Jackson denies lying to Galantha or doing anything that would reasonably warrant a mental health examination or suspension.

On April 25, 2001, Jackson filed with the Equal Employment Opportunity Commission a charge of discrimination based on disability and retaliation. On several occasions subsequent to March 29, Jackson, through his attorney, requested in writing that Lake County explain why it believed the demanded examination was job-related and consistent with business necessity, and identify any specific instances of Jackson's behavior that motivated the demand. Jackson's attorney also inquired about the scope of the examination. Lake County informed Jackson that its request for the examination was based on the following: Jackson "becomes easily confused,"

"frequently does not appear cognizant of what is going on around him," "frequently confuses people, work sites and events," "frequently forgets work assignments within minutes of being told what to do," "on a daily basis . . . gets lost or forgets directions on routes that should be well known to him," and his "co-workers have difficulty getting his attention as he often appears distant and remote." As for the scope of the examination, Lake County responded only that Jackson would undergo "a psychiatric evaluation of mental status which is a basic mental status exam." Lake County terminated Jackson's employment on or about June 25, 2001.

Jackson filed the instant complaint on August 22, 2001 after receiving a notice of right to sue. In Count I, Jackson alleges that Lake County failed to provide a reasonable basis for its apparent conclusion that the examination was job-related and consistent with business necessity and, thus, the demand to submit to a blanket mental examination violated 42 U.S.C. § 12112(d)(4)(A). In Count II, Jackson alleges that the totality of Lake County's statements and conduct indicate that it perceived him as suffering from a mental impairment that substantially limited him in multiple major life activities including, but not limited to, remembering, listening, comprehending basic instructions, learning, performing simple tasks, working and communicating, and that his suspension and subsequent termination were causally related to such perception in violation of 42 U.S.C. § 12112(a). Specifically, Jackson alleges that in addition to the statements made by Galantha, and Lake County's reasons for scheduling him for an examination, Jackson's former supervisor, Mike Grinnell ("Grinnell"), sent a memo to Brummond, dated March 27, 2001, noting Jackson's "unusual traits and behavior patterns;" that Jackson "[m]ust eat at certain times during the day and often announces that [he] needs to 'feed his brain;'" and that Jackson "[t]akes 8 to 10 pills every day which are supposedly supplements from a health food store." In Count III, Jackson alleges that Lake County suspended and subsequently terminated him because he sought legal advice regarding his ADA rights, interfered with his attempts to consult with an attorney before submitting to the examination, and coerced

4

and intimidated him by suspending him without pay because he refused to submit to the exam prior to consulting an attorney about his rights, in violation of 42 U.S.C. § 12203(a) and (b).

## DISCUSSION

### I. Count II – Disability Claim

Under the ADA, the plaintiff must show that "(1) he is disabled within the meaning of the ADA; (2) he is qualified to perform the essential functions of the job either with or without reasonable accommodation; and (3) he suffered from an adverse employment action because of his disability." *See Moore* v. *J.B. Hunt Transp., Inc.*, 221 F.3d 944, 950 (7th Cir. 2000). Lake County challenges only the first element, arguing that Jackson fails to adequately allege disability. A disability under the ADA is "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102 (2); *Moore*, 221 F.3d at 950. Jackson relies on the third category – that Lake County regarded him as disabled.

"The purpose of the 'regarded as' definition of a 'disability' is to cover individuals rejected from a job because of the 'myths, fears and stereotypes' associated with disabilities." *Amadio* v. *Ford Motor Co.*, 238 F.3d 919, 925 (7th Cir. 2001) (quoting *Sutton* v. *United Airlines, Inc.*, 527 U.S. 471, 489-90 (1999) (quoting 29 C.F.R. pt. 1630, App. § 1630.2(l)). "An individual may prove a 'regarded as' claim by showing that either '(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.'" *Id.* (quoting same). EEOC regulations interpreting the Act define the term "major life activities" to include "functions, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *See id.* (internal quote to 29 C.F.R. § 1630.2(i)); *see also Mattice* v.

5

*Mem. Hosp. of South Bend, Inc.*, 249 F.3d 682, 684 (7th Cir. 2001) (noting that "cognitive thinking" is a major life activity). When the major life activity at issue is working, a plaintiff must "at a minimum, . . . allege [he is] unable to work in a broad class of jobs." *Sutton*, 527 U.S. at 491. "Substantially limits" means that the person is either unable to perform a major life function or is "significantly restricted as to the condition, manner or duration" under which the individual can perform a particular major life function, as compared to the average person in the general population. 29 C.F.R. § 1630.2(j). The plaintiff must identify the major life activities "that he will attempt to prove the employer regarded as being substantially limited by his impairment." *Amadio*, 238 F.3d at 925.

Lake County argues that the only factual basis alleged in the complaint to support Jackson's allegation that Lake County perceived him as disabled is that Lake County requested that he submit to a mental examination for its stated reasons, but that "having concerns about an employee's fitness for duty and therefore requiring the employee to appear for a fitness for duty exam" does not "as a matter of law" serve as a basis for a "regarded as" claim. (Def.'s Mem. at 3-4) (citing *Wright v. Illinois Dept. of Corrections*, 204 F.3d 727 (7th Cir. 2000), *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804 (6th Cir. 1999) and *Cody v. CIGNA Healthcare of St. Louis, Inc.*, 139 F.3d 595 (8th Cir. 1998)). Jackson responds that Lake County's cases do not hold that a requested psychological examination can never, as a matter of law, support a "regarded as" claim, but represent fact-driven outcomes on motions for summary judgment, and that most of these cases concerned only the major life activity of "working" and involved little or no evidence of the defendant's perception other than the examination requirement.

The court agrees with Jackson. Although the cases cited by Lake County do hold that the request for a medical examination, at issue therein, did not, by itself, create an issue of fact that the employer perceived the employee as disabled and, indeed, examinations are permitted where "job-related and consistent with business necessity," 42 U.S.C. § 12112(d)(4)(A), they do not hold that, as a matter of law, a request for an examination can never be evidence that the

6

employer regarded an employee as disabled. Lake County's cases were decided on summary judgment.[1] The Supreme Court, however, has recently reiterated that, at the motion to dismiss stage, in discrimination cases, Rule 8's express language requires simply that the complaint "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz* v. *Sorema, N.A.*, ___ U.S. ___, 122 S. Ct. 992, 998 (2002) (quoting *Conley* v. *Gibson*, 355 U.S. 41, 47 (1957)). Jackson has alleged Lake County regarded him as substantially impaired in the major life activities of "remembering, listening, comprehending basic instructions, learning, performing simple tasks, working and communicating." (Compl., Count II, ¶ 27.) Jackson has not pleaded himself out of his "regarded as" claim. Although it is questionable whether he could state a claim with respect to the major life activity of "working" because he does not specifically allege he was regarded as "unable to work in a broad class of jobs," *see Mattice*, 249 F.3d at 686, the court need not decide this question at this stage, since he has also included allegations that he was regarded as substantially impaired in other major life activities, such as "learning." *See id.* at 684-85; *compare Sutton*, 527 U.S. at 490 (noting that petitioners failed to "make the obvious argument that they are regarded due to their impairments as substantially limited in the major life activity of seeing" but alleged only that the employer regarded their impairments as precluding them from working in the single job of "global airline pilot").

All of plaintiff's allegations, which include Galantha's statements, *e.g.*, that he did not feel Jackson was "mentally fit" and that there was medication for people "like" Jackson (Compl. ¶ 16), that Galantha said Jackson was suspended and, in the same conversation, cited Jackson's desire to seek legal advice prior to submitting to the exam as "another example of [Jackson's] abnormal behavior" (*Id.* ¶ 20), Grinnell's memo, *inter alia*, commenting on Jackson's "unusual

---

[1] Also, as pointed out by Jackson, most of the cases did involve only the life activity of "working" and, as one court noted, an employer's request that an employee submit to a medical exam may signal only that his job performance in that particular job is suffering, and the "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *See Sullivan*, 197 F.3d at 811.

7

traits and behavior patterns," (*id.* Count II, ¶ 26), and the requested exam, together with Jackson's allegation that the request for medical examination was illegal in that it was not properly tailored as required under 42 U.S.C. § 12112(d)(4)(A) (*see* Count I generally), support the conclusion that Lake County perceived him as substantially impaired in the major life activity of learning and/or cognitive thinking.[2] *See Duda* v. *Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1060 (7th Cir. 1998) (reversing dismissal of ADA claim where, *inter alia*, plaintiff had alleged employer's misperceptions about his mental illness caused them to require him to provide certain information about his counseling and medication changes and noting that while "[a]t a later stage in this litigation, the School District will have the opportunity to demonstrate that it was necessary to make such an inquiry," *i.e.* because it was "job-related and consistent with business necessity," *see* 42 U.S.C. § 12112(d)(4)(A), the court could not say that plaintiff's allegations "might not be supported by factual submissions that would support a judgment in his favor."); *cf. Tice* v. *Ctr. Area Transp. Auth.*, 247 F.3d 506, 515-16 (3d Cir. 2001) (suggesting that a request for an examination may, when "taken in conjunction with other evidence or circumstances surrounding the request, establish that the employer regarded the employee as disabled" and giving as an example an examination that is not limited to an assessment of the potential impairments that prompted the examination but instead became a "wide-ranging assessment of mental or physical debilitation"); *Andrews* v. *State of Ohio*, 104 F.3d 803, 807-08 (6th Cir. 1997) (whether the examination was justified is not properly resolved on a motion to dismiss).

Because a jury could reasonably infer that Lake County's alleged adverse employment action arose out of a "myth, fear or stereotype" about a perceived mental impairment, the court concludes that Jackson has sufficiently alleged that he was disabled within the meaning of the

---

[2] There is no basis for Lake County's suggestion (Def.'s Mem. at 2-3) that the court is somehow limited to considering only the allegation of a request for psychological examination. Nor has Lake County adequately explained its apparent conclusion that the allegations in Count I improperly contradict the allegations in Count II.

8

"regarded as" prong. Lake County's motion to dismiss Count II of Jackson's complaint is denied.

## II. Count III – Retaliation Claim

In Count III, Jackson alleges he was retaliated against in violation of 42 U.S.C. § 12203(a) and (b). Section § 12203(a) protects any individual who "has opposed any act or practice made unlawful by [the ADA] or because such individual has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [under the ADA]." 42 U.S.C. § 12203(a). Section 12203(b) provides that it is "unlawful to coerce, intimidate, threaten, or interfere with any individual . . . on account of his or her having . . . exercise[d] . . . any right granted or protected by [the ADA]." 42 U.S.C. § 12203(b). *See also Silk v. City of Chicago*, 194 F.3d 788, 799 (7th Cir. 1999).

A plaintiff may prevail on his retaliation claim by presenting either direct or indirect evidence of discrimination. *Silk v. City of Chicago*, 194 F.3d at 799. If he chooses to rely on the indirect burden-shifting method under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), he must first demonstrate a *prima facie* case that (1) he engaged in statutorily protected expression, (2) he suffered an adverse action, and (3) there is a causal link between the protected expression and the adverse action. *Id.* (quotation marks and citations omitted). Once a plaintiff succeeds in proving his *prima facie* case, the employer must offer a nondiscriminatory reason for its adverse action. The employee may then rebut the legitimate reason by showing that a discriminatory motive "was the determining factor behind the employer's action." *Id.* (citation omitted). *See also Talanda v. KFC Nat'l Mgmt. Co.*, 140 F.3d 1090, 1095-96 (7th Cir. 1998). "It is a well-established principle that, to receive protection under the ADA, a plaintiff must have acted 'in good faith and with a reasonable and sincere belief that he or she is opposing unlawful discrimination.'" *Id.* at 1096.

Lake County challenges only the first element of Jackson's *prima facie* case – whether he has adequately alleged that he engaged in statutorily protected expression. Lake County argues

that Jackson has failed to state a claim under either § 12203(a) or (b), because "neither the act of requesting legal advice nor Jackson's refusal to comply with his employer's order qualify as protected activity under the ADA." (Def.'s Mem. at 5) (citing *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 706 (4th Cir. 2001)). Jackson responds by arguing that his conduct could be viewed as an "intimately related and integral step in the process of making a formal [EEOC] charge," citing, *inter alia*, cases involving the "participation" clause of section 12203(a) (*e.g., Brower v. Runyon*, 178 F.3d 1002, 1006 (8th Cir. 1999), and *Croushorn v. Bd. of Trustees of Univ. of Tenn.*, 518 F. Supp. 9, 23 (M.D. Tenn. 1980)), and also argues that a plain reading of section 12203(a)'s "opposition" clause would warrant denying Lake County's motion since "a lay employee who tells his employer he intends to seek legal advise [*sic*] with regard to his rights under the ADA, seeks legal advise [*sic*], and then based on that advise [*sic*] refuses to comply with a demand he feels is illegal are in the majority of cases the necessary first steps for such employee to file a formal charge." (*See* Resp. at 9.)

The cases cited by Jackson in support of his argument that his conduct is protected by the "participation" clause of § 12203(a), because it is intimately related to the filing of a formal charge, are not entirely on point in that in those cases the participation generally involved plaintiff informing his employer that he had spoken with an EEO counselor, *Brower*, 178 F.3d at 1006, or that he intended to file a formal charge, *Croushorn*, 518 F. Supp. at 23, and therefore could presumably be considered part of the participation in an "investigation, proceeding, or hearing." *See id.* at 22 ("when the conduct of the plaintiff that produces the retaliation predates the actual filing of a charge, that conduct must have a sufficiently close connection with EEOC charge-filing before it will be protected by the 'participation' clause."). Although Jackson attempts to bolster his "participation" claim by attaching a copy of a letter written by his attorney three weeks after his suspension notifying Lake County of his claim that the exam violated the ADA and that an EEOC charge would be filed, and a copy of the charge filed a week later, the court does not consider materials extraneous to the complaint on a motion to dismiss. *See*

10

Fed. R. Civ. P. 12(b). There are no allegations *in the complaint* that Jackson informed Galantha or anyone else at Lake County that he had spoken to an EEO counselor or intended to file an EEOC charge prior to his suspension and/or termination.

Nevertheless, the court concludes that Jackson has stated a claim for retaliation under the "opposition" clause of 12203(a), and most of Jackson's argument appears geared toward this theory, in any event.[3] In such cases, the focus appears primarily on whether the employee's complaint and/or conduct can reasonably be said to apprise the employer of the purportedly unlawful activity. *See Alexander v. Gerhardt Enter., Inc.*, 40 F.3d 187, 195 (7th Cir. 1994) (noting that plaintiff established that she engaged in statutorily protected expression under the "opposition" clause where she wrote memorandum indicating her negative emotional reaction to her supervisor's comments and set out her position and requested relief, and reasoning that even though she did not expressly request her supervisor cease making racist slurs, "the tone and content of her memorandum make it abundantly clear, . . . that her intent was not only to receive a public apology, but also to prevent similar comments in the future" and "notification and complaint about the offending incident suffice.")

The allegations regarding Jackson's conduct can reasonably be read to have apprised Lake County that Jackson opposed allegedly illegal conduct – namely the requirement that he submit to a blanket psychological examination. On March 28, Galantha told him that Lake County had made an appointment for him; however, Galantha did not inform Jackson about what type of testing would be performed or the reasons for the exam other than that Galantha did not think Jackson was "mentally fit." Jackson responded that he would go to the appointment but

---

[3] *Croushorn* noted that "in conceptual terms, . . . 'participation' is primarily a specialized form of 'opposition' that requires a connection with an 'investigation, proceeding, or hearing' before the EEOC and receives more intensive protection than other opposition activities." 518 F. Supp. at 24-25. It appears that in the Seventh Circuit a requirement of the "opposition" clause not present under the "participation" clause is that "the form of the 'opposition' must not be unlawful . . . nor 'excessively disloyal or hostile or disruptive and damaging to the employer's business.'" *See Reeder-Baker v. Lincoln Nat'l Corp.*, 649 F. Supp. 647, 656 (N.D. Ind. 1986) (internal quotations omitted), *aff'd*, 834 F.2d 1373 (7th Cir. 1987); *see also Mozee v. Jeffboat, Inc.*, 746 F.2d 365, 374 (7th Cir. 1984). Lake County, however, has not argued that Jackson's complaint fails under the opposition clause for this reason.

11

would only submit to the exam provided he could first speak with an attorney regarding his rights in relation to said exam. After speaking with an attorney who advised him to speak with an employment attorney before submitting, Jackson rescheduled the exam, so as to allow himself time to speak with the employment attorney. A jury could infer from these allegations that Jackson sufficiently apprised Lake County that he thought the request for a blanket examination was a violation of his rights.[4] Lake County's belated argument that Jackson could not have had a reasonable belief that he was challenging unlawful conduct is not only waived, but unpersuasive.[5]

Since Lake County's only argument for why Jackson could not state a claim under § 12203(b), is the same as that with respect to § 12203(a), the court concludes that Jackson has sufficiently stated a claim under § 12203(b) as well. Therefore, Lake County's motion to dismiss Count III of Jackson's complaint is denied.

---

[4] *Haulbrook*, cited by Lake County, wherein the court (in a footnote) stated that plaintiff's refusal to meet with his superiors until he spoke with his attorney did not constitute protected opposition, is inapposite in that not only was there no assertion by plaintiff that a request to submit to a medical exam was illegal (as here in Count I), but the *Haulbrook* plaintiff's refusal centered on *meeting with superiors* before consulting with attorney whereas here Jackson refused *to submit to the allegedly illegal exam* before consulting with his attorney, and thus his refusal can be construed as protesting allegedly unlawful activity.

[5] In its reply brief, Lake County argues for the first time that Jackson could not have had a "good faith" belief that the examination was unlawful in that he "admittedly did not know if he was being subjected to an unlawful employment practices" and that the suspension could only have been a direct result of his insubordination. (*See* Reply, 5-6.) For support, Lake County points to various allegations in the complaint, *i.e.* Jackson told Galantha that he *would go* to the examination and Jackson informed Galantha the day before the exam that he wanted to speak to an attorney but was not suspended then. (*See id.*) However, arguments raised for the first time in the reply are waived, *Lash* v. *Cooper*, 952 F. Supp. 1245, 1253 (N.D. Ill. 1996). In any event, a jury could infer that Jackson had a reasonable belief the requested exam violated the law since after he spoke with the first attorney, that attorney informed him he should not submit until he spoke further with an employment attorney, suggesting to Jackson that the employer's demand was, at least, legally problematic. In light of this advice and because he could not speak further with an employment attorney before the exam, Jackson actually rescheduled the exam. Further, whether it was Jackson's protected activity or an act of insubordination that caused the adverse action is not for this court to decide on a motion to dismiss.

## CONCLUSION

For the above stated reasons, the court grants the motion to strike the requests for punitive damages but denies the motion to dismiss [#3][#6].

ENTER:

Dated: April 29, 2002

JOAN HUMPHREY LEFKOW
United States District Judge