

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DON A. JACKSON, )
)
      Plaintiff, )
)
      vs. ) No. 01 C 6528
) Judge Joan H. Lefkow
LAKE COUNTY, an Illinois municipal )
corporation, )
)
      Defendant. )
)

## MEMORANDUM OPINION AND ORDER

On November 7, 2003, a jury returned a verdict in favor of plaintiff Don Jackson ("Jackson") on his claims that defendant Lake County, an Illinois municipal corporation ("Lake County"), ordered him to submit to a psychiatric examination in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq.* ("ADA"); suspended and terminated him in retaliation for engaging in activities protected by the ADA; and coerced, intimidated, threatened or interfered in his exercise of rights protected by the ADA. The jury awarded Jackson compensatory damages in the amount of $325,000. The jury found in favor of Lake County and against Jackson on his claims that Lake County "regarded" him as being disabled and suspended and subsequently terminated him because of its perception that he was disabled. Before the court is Lake County's combined motion for renewed judgment as a matter of law under Rule 50(b), Fed. R. Civ. P., for a new trial under Rule 59(a), Fed. R. Civ. P., and to alter or amend the judgment by remittitur under Rule 59(e), Fed. R. Civ. P. For the reasons stated below, Lake County's motion is granted in part and denied in part.

## ANALYSIS[1]

Lake County argues that it is entitled to judgment as a matter of law on Jackson's ADA claims. Lake County further argues that it is entitled to a new trial because the verdict was against the manifest weight of the evidence; because of the excessiveness of the compensatory damages award; because the court made evidentiary errors which materially affected the outcome of the trial; and because the court erred in its instructions to the jury. Finally, Lake County argues that the Seventh Circuit's recent decision in *Kramer v. Bank of America*, 355 F.3d 961 (7th Cir. 2004), should apply retroactively to this case to bar Jackson's recovery of compensatory damages for his claim of retaliation. The court will consider each argument separately.

### I. Renewed Motion for Judgment as a Matter of Law Pursuant to Rule 50(b)

Lake County first argues that it is entitled to judgment as a matter of law on Jackson's ADA claims because (1) Jackson's failure to establish at trial that he was a qualified individual with a disability was fatal to maintaining any claim under the ADA; (2) Jackson's failure to show that he went to the psychiatric exam is fatal to his claim for illegal psychiatric exam under the ADA; (3) Jackson's refusal to go to the exam was not a "protected activity" under the ADA and, as a consequence, his termination for refusing to go to the exam could not serve as the basis for a claim of retaliation or coercion; (4) the evidence at trial showed that it was plaintiff's refusal to go to the exam that was the basis for his suspension and termination; and (5) applying a subjective standard when evaluating the lawfulness of a challenged medical exam, the exam was lawful because the

---

[1] For a factual background of this case, the court refers the parties to its recitation of the facts in its memorandum opinion and order denying Jackson's motion for summary judgment as to count I of the complaint and Lake County's motion for summary judgment on all of Jackson's claims. *See Jackson v. Lake County*, No. 01 C 6528, 2003 U.S. Dist. LEXIS 16244 (N.D. Ill. Sep. 16, 2003).

2

motivation for ordering the exam was not manifestly discriminatory.

Under Rule 50(b), judgment as a matter of law may be entered where "there is no legally sufficient evidentiary basis for a reasonable jury to find for [a] party on [an] issue." *Kossman v. Northeast Ill. Reg'l Commuter R.R. Corp.*, 211 F.3d 1031, 1036 (7th Cir. 2000), quoting Fed. R. Civ. P. 50. After reviewing the record and drawing all reasonable inferences in the light most favorable to the non-moving party, the court must determine whether the verdict is supported by sufficient evidence. *Id.*, citing *Tincher v. Wal-Mart Stores, Inc.*, 118 F.3d 1125, 1129 (7th Cir. 1997). While the court will overturn a jury verdict only if it concludes that "no rational jury could have found for the plaintiff," *Collins v. Kibort*, 143 F.3d 331, 335 (7th Cir. 1998), "a mere scintilla of supporting evidence will not suffice." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1173 (7th Cir. 2002), quoting *Futrell v. J.I. Case*, 38 F.3d 342, 356 (7th Cir. 1994).

For the most part, the arguments identified by Lake County in support of its motion for judgment as a matter of law were raised in its motion for summary judgment. In its motion for summary judgment as in the present motion, Lake County argued that only disabled individuals can sue for violations under § 12112. The court disagreed with Lake County's argument then, and Lake County has not identified any new reason why the court should revisit this issue. Lake County also argued previously that Jackson could not bring this suit because no mental examination ever took place due to Jackson's refusal to attend the examination. Again, the court rejected this argument and explained that Jackson was not precluded from proving that there was insufficient business necessity for any mental health examination. Finally, Lake County argued that the court should adopt a subjective standard for evaluating whether inquiries or examinations are job-related and consistent with business necessity. The court, however, found that an objective or reasonable person standard

3

was more appropriate. In its present motion, Lake County has not identified any new authority or developed any legal argument as to why the court should reconsider issues already decided. These arguments also do not address the absence of evidence as to Jackson's claims or contend that no rational jury could have found for Jackson. As a consequence, the court will not reconsider or alter its previous rulings.[2]

The only new issues raised by Lake County in its present motion are its assertions that Jackson's refusal to go to the exam was not a "protected activity" under the ADA and that the evidence at trial showed that it was plaintiff's refusal to go to the exam that was the basis for his suspension and termination. The court considers these issues "assertions" rather than arguments because Lake County again fails to provide any analysis of these issues, cite to any legal authority, or even discuss the evidence presented at trial. The court reminds Lake County that "it is not the role of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel." *Doherty v. City of Chicago*, 75 F.3d 318, 324 (7th Cir. 1996), quoting *Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir. 1986); *see also United States v. Jones*, 224 F.3d 621, 626 (7th Cir. 2000) (arguments that are not adequately developed or supported are waived, and the court need not consider them). Accordingly, the court declines consideration of these issues and denies Lake County's renewed motion for judgment as a matter of law.

## II. Motion for a New Trial

Rule 59(a)(1), Fed. R. Civ. P., allows a district court to grant a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the

---

[2] Lake County repeats these arguments with regard to its motion for a new trial pursuant to Rule 59(a)(1) by asserting that the jury's verdict of liability was against the manifest weight of the evidence.

United States." A motion for a new trial may be granted if the verdict is against the manifest weight of the evidence, if the damages are excessive, or if a prejudicial error occurred. *Mid-America Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1367 (7th Cir. 1996). Rule 59 affords trial courts broad discretion in determining the propriety of a new trial, *Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1377 (7th Cir. 1990), although "it is always an abuse of discretion to base a decision on an incorrect view of the law." *United States v. Mietus*, 237 F.3d 866, 870 (7th Cir. 2001).

Lake County makes four arguments in support of its motion for a new trial: (1) the verdict was against the manifest weight of the evidence; (2) the court made evidentiary errors which materially affected the outcome of the trial; (3) the court erred in its instructions to the jury; and (4) the compensatory damages award was excessive.

A.  Evidence Supporting the Verdict

In considering whether a verdict is against the manifest weight of the evidence, the court examines whether there is a legally sufficient basis to support a jury verdict when viewing the evidence in the light most favorable to the prevailing party. *Harvey v. Office of Banks & Real Estate*, 377 F.3d 698, 707 (7th Cir. 2004). Here, Lake County reasserts arguments that the court addressed and rejected previously.[3] Lake County also argues that there was no evidence offered at trial to support the conclusion that the challenged psychiatric examination was directed toward whether Jackson had a disability within the ADA and that the court erred in allowing the issue of whether Jackson was disciplined for seeking legal advice go to the jury.

As to the former contention, it was not necessary for the jury to find that the decision

---

[3] *See, supra*, note 2.

requiring the psychiatric examination was directed toward discerning whether Jackson had a disability in order to find Lake County liable as long as the jury found that this decision was not job-related or consistent with business necessity.[4] As the court explained previously, "For Lake County's decision to be permissible under the ADA, there must be sufficient evidence for a reasonable person to doubt whether Jackson was capable of performing his job." Memorandum Opinion and Order at 19. With regard to the latter contention, Lake County simply asserts that "the court erred in allowing the issue of whether plaintiff was disciplined for seeking legal advice to go to the jury" (¶ 36), but does not develop this argument any further or discuss the evidence presented at trial and, as a consequence, waives this argument. As a result, Lake County has not established that the verdict was against the manifest weight of the evidence.

B.   Evidentiary Errors

Lake County also recites a veritable laundry list of evidentiary errors the court purportedly made during the course of the trial, including that the court erred by (1) excluding evidence of corroborative testimony of the events described in Mike Grinnell's memorandum of March 27, 2001; (2) excluding John Streicher's testimony regarding the July 1998 accident; (3) allowing Jackson to testify as to his earnings before he lost his job with Lake County, his bankruptcy, and his performance in his new job; and (4) allowing Jackson's attorney to ask Robert Brummond to opine as to whether there would have been an investigation of Jackson's job performance had Jackson not complained of harassment. Again, Lake County fails to cite any legal authority and only belatedly

---

[4]This argument essentially reframes the argument raised by Lake County with regard to the objective versus subjective standard in evaluating the decision of an employer to ask an employee to submit to a physical or mental examination.

6

develops its analysis in its reply brief.[5] Thus, Lake County waives these objections. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("Perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").[6]

C. Jury Instructions

Lake County also argues that the court erred in its instructions to the jury, specifically, instructions 11, 13, 15, 16, and 18, and, more generally, in declining to give the instructions submitted by Lake County. "To win a new trial based on an erroneous jury instruction, [Lake County] must show both that the instructions did not adequately state the law and that the error was prejudicial to them because the jury was likely to be confused or misled." *Boyd v. Ill. State Police*, 384 F.3d 888, 894 (7th Cir. 2004), citing *Gile v. United Airlines, Inc.*, 213 F.3d 365, 375 (7th Cir. 2000). "An erroneous jury instruction could not prejudice [Lake County] unless 'considering the instructions as a whole, along with all of the evidence and arguments, the jury was misinformed

---

[5] Lake County also waited until after Jackson filed his response to cite to the relevant portions of the transcript with regard to its evidentiary objections.

[6] Even if Lake County had not waived its objections, the court is unconvinced that any evidentiary errors, if they did exist, necessitate a new trial. Jackson's testimony regarding the amount of his earnings before he lost his job with Lake County, his bankruptcy, and his performance with a subsequent employer was relevant to his claimed emotional distress damages. Moreover, Lake County waived its objections to Jackson's testimony regarding his bankruptcy and his performance at his new job by not objecting to such testimony at trial. The court also is unpersuaded that it incorrectly excluded John Streicher's proffered testimony regarding his observations of the people injured in the July 1998 accident and whether Jackson had the opportunity to observe whether there were injuries. The argument offered by Lake County in its reply brief boils down to its assertion that the seriousness of the accident was central to its decision with regard to the medical exam. This argument does not address the court's reasoning for excluding the testimony: that it was substantially outweighed by its prejudicial effects where the accident occurred almost three years before Jackson was terminated, the testimony was collateral to the issues before the jury, and such testimony would not properly impeach the testimony offered by Jackson. Finally, even if the court erred in excluding the evidence corroborating Grinnell's memorandum and allowing Brummond to offer an opinion regarding whether there would have been an investigation of the plaintiff's job performance, Lake County has not given the court any reason to believe that the absence of such evidence had a substantial influence over the jury, resulting in a verdict inconsistent with substantial justice. *See Sarkes Tarzian, Inc. v. U.S. Trust Co.*, 397 F.3d 577, 584 (7th Cir. 2005), citing *Old Replubic Ins. Co. v. Employers Reinsurance Co.*,144 F.3d 1077, 1082 (7th Cir. 1998) (interpreting Federal Rule of Civil Procedure 61 as permitting a new trial only "when a significant chance exists that [evidentiary errors] affected the outcome of the trial.").

about the applicable law.'" *Id.*, quoting *Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries*, 272 F.3d 441, 452 (7th Cir. 2001). In its motion for a new trial, Lake County has failed to cite to any legal authority with which the court may compare its jury instructions or which would demonstrate that the jury's confusion led to prejudice. In addition, Lake County's arguments are essentially the same legal arguments previously rejected by the court. Thus, Lake County has not established that any error in the jury instructions warrants a new trial.

D. Compensatory Damages Award

Lake County also challenges the compensatory damages award of $325,000 and seeks either a new trial or a remittitur of the award.[7] In determining whether a damages award is appropriate, the court considers "whether the award is monstrously excessive; whether there is no rational connection between the award and the evidence, indicating that it merely a product of the jury's fevered imaginings or personal vendettas; and whether the award is roughly comparable to awards made in similar cases." *E.E.O.C. v. AIC Security Invest., Ltd.*, 55 F.3d 1276, 1285 (7th Cir. 1995) (citations and internal footnote omitted). The court is mindful that it "should not substitute a jury's damages verdict with its own figure merely because a case with similar facts has not yet arisen, or because a plaintiff in a similar case was perhaps not able to plead his facts to the jury as well. *Lampley*, 340 F.3d at 485. At the same time, the court must ensure that the award is supported by competent evidence. *Ramsey v. American Air Filter Co., Inc.*, 772 F.2d 1303, 1313 (7th Cir. 1985). The award for compensatory damages must bear a reasonable relation to the actual injury sustained; it may not be punitive in nature. *Cygnar v. City of Chicago*, 865 F.2d 827, 848 (7th Cir. 1989).

---

[7] Jackson implicitly concedes that the verdict cannot exceed the $300,000 statutory cap set forth in 42 U.S.C. § 1981a(b)(3)(D) by referring to the damage award as $300,000.

8

Lake County contends, however, that this is a case involving a "garden variety wrongful discharge" and that nothing in the record supports an award of damages that is over five times greater than the maximum amount generally allowed in this circuit. Lake County argues further that Jackson failed to offer evidence of any physical symptoms of emotional distress, loss of sleep, or the need for medical care or therapy. While such evidence is necessary to meet the high threshold of severity for a claim of intentional infliction of emotional distress, it is not necessary for Jackson to reach this threshold to recover compensatory damages for emotional distress arising from his wrongful termination. *See Avitia v. Metropolitan Club of Chicago*, 49 F.3d 1219, 1229 (7th Cir. 1995) ("It is only with respect to the tort of inflicting emotional distress that a threshold of severity must be crossed.").

Lake County also points to the lack of evidence of the emotional distress suffered by Jackson apart from his own testimony. The lack of corroborating evidence is not dispositive, however, because "[a]n award for nonpecuniary loss can be supported, in certain circumstances, solely by the plaintiff's testimony about his or her emotional distress." *Tullis v. Townley Eng'g & Mfg. Co.*, 243 F.3d 1058 at 1068 (7th Cir. 2001), citing *Merriweather v. Family Dollar Stores of Ind., Inc.*, 103 F.3d 576, 580 (7th Cir. 1996). Moreover, Lake County failed to refute the evidence of emotional distress offered by Jackson; it offered no evidence at trial regarding the emotional distress that the bankruptcy may have caused Jackson to suffer separate and apart from his termination and did not question Jackson regarding his debt at trial.

"It is within the jury's province to evaluate the credibility of the witnesses who testify to emotional distress . . . ." *Id.* In this case, the jury clearly believed that Jackson's termination was more than a garden variety wrongful termination, and the evidence supports that belief. The jury

observed the demeanor of Jackson, including his tears on the witness stand, and believed his testimony regarding his emotional distress. Jackson testified that he had felt betrayed, confused, and surrounded following the March 28, 2001 meeting during which he was ordered to undergo an examination by an unknown physician with only an evening's notice and without any explanation as to why this examination was needed. He had felt upset and at a loss when he was given only two hours to consult with an attorney regarding the examination. Jackson also felt upset that he had put in a complaint about other individuals and that the situation had been turned against him. He was humiliated, embarrassed, shamed, and degraded when he was suspended without pay and told to clean out his locker, particularly when some of his co-workers were standing around and laughing. In addition, this case involved more than a simple termination, Jackson suffered through an uncertain employment future after being berated by a furious supervisor and suspended without pay for a period of three months.

Jackson further testified regarding how his suspension and termination disrupted his lifestyle. He had to explain to his nieces and nephews that he had lost his job. He found this admission to his family very degrading and very humiliating because he wanted to provide for his family but could no longer do so. Jackson experienced further stress with regard to his financial obligations because he could not provide the necessities for his family or pay the bills, which resulted in his filing for bankruptcy. His suspension and termination also came after working for Lake County for over four years without incident and while receiving excellent performance reviews.

Although the evidence presented to the jury demonstrates that an award of significant compensatory damages was appropriate, the court finds that a compensatory damages award of $325,000 (or $300,000) is excessive in this case, especially in light of the cases cited by the parties.

10

Both parties have identified numerous cases in which compensatory damages awards were upheld or remitted. Unsurprisingly, Lake County refers the court to cases that upheld or remitted damages to amounts lower than the cases cited by Jackson. None of the cases involved identical or nearly identical testimony and evidence regarding the emotional distress suffered by the plaintiffs, but they offer guidance as to the appropriate range of compensatory damages awards for a claim of wrongful termination.

Lake County relies on *Avitia v. Metropolitan Club of Chicago*, 49 F.3d 1219, 1227-29 (7th Cir. 1995), in which the plaintiff testified to intense emotion on being fired ("I felt like the Sears Tower . . . was falling on top of me. Thirteen years working in this place . . . and I was thrown like a piece . . . of garbage at the end. . . . Until now, I can feel that. . . ." *Id.* at 1227). The court ruled that where the plaintiff had been able to find a comparable replacement job in three months, the award of $21,000 for the distress of being fired was too much. Also citing to a case nearly twenty years old, Lake County asserts that the emotional damages awards in employment cases typically fall within the range of $500 to $50,000.[8] *See Webb v. City of Chester*, 813 F.2d 836-37 (7th Cir. 1986) (collecting cases). *See also Biggs v. Village of Dupo*, 892 F.2d 1298 (7th Cir. 1990) (award of $60,000 remitted to $30,030 for claim of First Amendment retaliation); *Taliferro v. Augle*, 757 F.2d 157 (7th Cir. 1985) (award of $47,000 conditionally remitted to $25,000 for claim of excessive force); *Ramsey v. American Air Filter Co.*, 772 F.2d 1303 (7th Cir. 1985) (award of $75,000 remitted to $25,000 for claim of racial discrimination); *Enright v. Ill. State Police*, No. 97 C 8688, 2000 U.S.

---

[8]Apart from its citation to two opinions from the year 2000, Lake County has not offered any assessment of the present day value of the verdicts in the older cases but should have done so. *See Deloughery v. City of Chicago*, No. 02 C 2722, 2004 U.S. Dist. LEXIS 9102, at *20 (N.D. Ill. May 27, 2004), citing *Tullis*, 243 F.3d at 1069 ("[W]hen an older verdict is assessed for comparison purposes, it should be converted to current dollars. The higher-end verdicts from the early 1980's reviewed in *Webb*, converted to today's dollars, would fall in the range of $50,000 to $100,000.").

11

Dist. LEXIS 5483 (N.D. Ill. Apr. 18, 2000) (award of $200,000 remitted to $50,000 for claim of employment discrimination); *Bennett v. Smith*, No. 96 C 2422 (N.D. Ill. Dec. 18, 2000) (award of $240,000 remitted to $45,000 for claim of employment discrimination); *E.E.O.C. v. AIC Security Investigations, Ltd.*, 55 F.3d 1276 (7th Cir. 1995) (award of $50,000 not excessive for claim of wrongful termination).

By contrast, Jackson cites to numerous cases upholding verdicts in amounts similar to his compensatory damages award of $300,000. *See Bates v. Bd. of Educ. of the Capital Sch. Dist.*, No. 97-394-SLR, 2000 U.S. Dist. LEXIS 4873 (D. Del. Mar. 31, 2000) ($750,000 compensatory damages award reduced to statutory cap of $300,000 for claim of retaliation); *Deloughery v. City of Chicago*, No. 02 C 2722, 2004 U.S. Dist. LEXIS 9102 (N.D. Ill. May 27, 2004) (remitting award of $250,000 to $175,000 for claim of failure to promote); *Fox v. General Motors Corp.*, 247 F.3d 169 (4th Cir. 2001) (award of $200,000 upheld in hostile work environment case where evidence of emotional harm was corroborated by medical professionals); *Harvey v. Office of Banks & Real Estate*, 377 F.3d 698 (7th Cir. 2004) (award of $100,000 upheld on claim of discrimination; awards between $50,000 and $150,000 upheld on claims of discrimination and retaliation); *Martyne v. Parkside Medical Servs.*, No. 97 C 8295, 2000 U.S. Dist. LEXIS 8019 (N.D. Ill. June 8, 2000) (award of $302,000 reduced to damage cap of $300,0000 on claim of disability discrimination); *Neal v. Honeywell*, 191 F.3d 827 (7th Cir. 1999) (upheld remitted damage award of $200,000 from $550,000 for claim of wrongful termination); *Spina v. Forest Preserve District of Cook County*, 207 F. Supp. 2d 765 (N.D. Ill. 2002) ($3,000,000 award remitted to $200,000 for claims of sexual harassment and discrimination).

The decisions cited by both parties are distinguishable from the present matter. In *Avitia*, the

Seventh Circuit reduced the damages award from $21,000 to $10,500 because the degree of emotional distress was not proven; only 14 lines of testimony addressed emotional distress. *Lampley v. Onyx Acceptance Corp.*, 340 F.3d 478 at 484 (7th Cir. 2003) (distinguishing *Avitia* and upholding a $75,000 compensatory damages award). Similarly, in *Merriweather*, the award of $25,000 was remitted to approximately $6,000 because the plaintiff's retaliatory discharge was only one of several factors, including her father's death, affecting the plaintiff's emotional state. 103 F.3d at 581. In this case, Jackson established with more lengthy testimony about the immediate and lingering effects of his suspension and termination on his emotional well-being that his emotional distress was the result of his wrongful termination. The cases cited by Jackson are also distinguishable from the present matter because they involved instances in which the emotional distress of the plaintiff was corroborated by physical distress, *see Fox*, 247 F.3d at 180, counseling and/or medical help, *see Harvey*, 377 F.3d at 714, threatened harm, *see Neal*, 191 F.3d at 829, or instances of extreme harassment for a prolonged period, *see Spina*, 207 F. Supp. 2d at 775.

Having considered the relevant factors, including the unrefuted testimony offered by Jackson, the absence of physical symptoms of his emotional distress, the absence of evidence of medical treatment or counseling for his emotional distress, the circumstances surrounding his suspension and termination, and the verdicts (including their present day value) in comparable cases, the court finds that the $325,000 award lacks a rational connection to the evidence. Accordingly, the court grants Lake County's motion to the extent that is seeks a remittitur of the compensatory damages award. The court will grant Lake County's motion for a new trial unless Jackson accepts, within fourteen days of this order, a reduction of the compensatory damages award to $100,000. This amount falls well within the range of reasonableness considering the particular circumstances of this case.

## III. The Kramer Decision

On January 20, 2004, the Seventh Circuit held that compensatory damages are not available for retaliation cases under the ADA. *See Kramer v. Bank of America*, 355 F.3d 961 (7th Cir. 2004). This decision affirmed the decision of Judge Zagel, who had ruled that a plaintiff may not seek compensatory and punitive damages for a claim of retaliation under the ADA. *Id.* at 964. Lake County now argues that the court should apply *Kramer* retroactively to Jackson's award of compensatory damages and reduce that award accordingly, relying on *Felzen v. Andreas*, 134 F.3d 873, 877 (7th Cir. 1998) ("when a court applies a rule of federal law to the parties before it, the rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate the announcement of the rule.").

The present motion is the first time that Lake County has raised this issue before the court. On May 10, 2002, over a year and a half before this case went to trial, Judge Zagel issued his opinion in *Kramer*, ruling that a plaintiff may not seek compensatory or punitive damages for a claim of retaliation under the ADA. 355 F.3d at 964. In addition, Judge Zagel entered his findings of fact and conclusions of law, Kramer appealed Judge Zagel's decision, and the parties argued their respective positions to the Seventh Circuit *before* this case went to trial. Yet, Lake County never filed a motion or argued that Jackson was not entitled to compensatory damages for a claim of retaliation under the ADA. "A motion for a new trial or judgment as a matter of law cannot be used to raise new arguments which could, and should, have been made before the judgment was issued." *Sokol Crystal Prods. v. DSC Communications Corp.*, 15 F.3d 1427 at 1434 (7th Cir. 1994), quoting *Fed. Deposit Ins. Co. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986). Lake County should have

14

raised an objection to Jackson's claim for compensatory damages for his claim of retaliation in a motion to dismiss or at summary judgment, before the matter went to trial, before evidence and arguments were presented to the jury, and before the jury reached its verdict. By raising this new legal argument only after these proceedings had concluded, Lake County waived this argument.

## ORDER

For the reasons stated above, Lake County's combined motion [#139] for renewed judgment as a matter of law, a new trial, and to alter or amend the judgment by remittitur is granted in part and denied in part. Unless Jackson advises the court on or before September 1, 2005 that he accepts a remitted compensatory damages award in the amount of $100,000, the court will grant Lake County's motion for a new trial.

Enter: _[signature]_

JOAN HUMPHREY LEFKOW
United States District Judge

Date: August 11, 2005